IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| CANBERRA SUBDIVISION, LLC, a Utah limited liability company;<br><br>    Plaintiff,<br><br>v.<br><br>GEORGE E. HARPER, JR., AS TRUSTEE OF THE GEORGE E. HARPER JR. TRUST DATED THE 18TH DAY OF JULY 2017; THE GEORGE E. HARPER JR. TRUST DATED THE 18TH DAY OF JULY 2017; and MAPLE MOUNTAIN RECOVERY, INC.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT re: RIPENESS**<br><br>Case No. 2:18-cv-00916<br><br>Judge Clark Waddoups |

Before the court are six motions: **(1)** Defendants' Motion for Judgment on the Pleadings, (ECF No. 16); **(2)** Plaintiff's Motion for Summary Judgment, (ECF No. 19); **(3)** Defendants' Motion for Summary Judgment re: Ripeness, (ECF No. 41); **(4)** Defendants' Rule 12(b) Motion to Dismiss for Lack of Jurisdiction—Standing, (ECF No. 43); **(5)** Plaintiff's Motion for Leave to File Surreply, (ECF No. 49); and **(6)** Plaintiff's Motion for Leave to Conduct Limited Discovery in Opposition to Defendants' Motion for Summary Judgment re: Ripeness, (ECF No. 53).

As explained below, the court GRANTS Defendants' Motion for Summary Judgment re: Ripeness. (ECF No. 41.) The court DENIES Plaintiff's Motion for Leave to File Surreply, (ECF No. 49) and DENIES Plaintiff's Motion for Leave to Conduct Limited Discovery, (ECF No. 53.) The remaining motions, (ECF Nos. 16, 19, & 43) are DENIED as MOOT.

**Undisputed Facts**

Plaintiff Canberra Subdivision, LLC is a Utah limited liability company. J. Christian Washburn submitted a declaration under penalty of perjury that he is a member of Canberra,

1

Subdivision LLC. (Decl. Washburn ¶ 3, ECF No. 56-1 at 1.) He also provided that "[t]o qualify as a member of Canberra, members must be property owners within the Canberra Subdivision in Lindon, Utah . . . ." (Decl. Washburn ¶ 5, ECF No. 56-1 at 2.) He further stated that "[t]he members of Canberra . . . authorized Canberra to bring this action on their behalf." (Decl. Washburn ¶ 9, ECF No. 56-1 at 2.)

Defendant George E. Harper is "the owner of the property located at 1422 East 155 South, Lindon, Utah 84042" (the Property). (Decl. Harper ¶ 9, ECF No. 56-1 at 2.) The Property is located within the Canberra Hills Subdivision.

"In November 2017, Harper purchased the home located at" the Property, "where he planned to open [a] residential inpatient treatment center . . . ." *Harper v. Lindon City*, No. 2:18-CV-00772-DAK, 2019 WL 2188910, at *1 (D. Utah May 21, 2019). "On or about November 11, 2017, Harper submitted a land use application to Lindon City" for the treatment facility. *Id*. "The application, however, did not propose a number of residents." *Id*. "On or about February 22, 2018, Harper submitted another land use application for the Property . . . ." *Id*. "In his second application, Harper sought a conditional use permit to use the Property 'as a residential drug treatment and rehabilitation' program." *Id*. "In conjunction with the second application, Harper requested both a business license and a reasonable accommodation under the Fair Housing Act . . . in which he asked [Lindon] City to waive its eight-person limit on the number of unrelated persons that may live together in a 'residential facility for persons with a disability' . . . ." *Id*. Harper "requested a reasonable accommodation to allow" the facility to house sixteen residents. *See id*.

"In August 2018, [Lindon] City held a hearing . . . to consider Harper's request for a reasonable accommodation in allowing sixteen unrelated individuals to reside at the Property."

2

*Id*. at *2. It is undisputed that "[a]t an informal hearing before the Lindon City Planning Director on August 16, 2018, Harper admitted that during the week of August 6, 2018, the Defendants conducted week-long training meetings for recovery and addiction coaches at the Property." (Compl. ¶ 16, ECF No. 2 at 4.[1]) "On August 29, 2018, Hugh Van Wagenen . . . the City Planning Director, denied Harper's request." *Harper v. Lindon City*, 2019 WL 2188910, at *2.

On September 12, 2018, Plaintiff sent Harper a letter informing him that the Canberra Property Owners believed that opening a treatment facility within Canberra subdivision would be a violation of Canberra's restrictive covenants. (ECF No. 2-1 at 1.) The letter further provided that "[i]f the Harper Trust does not cease and desist from its violative uses or attempted violative uses of the Property, Canberra will have no choice but to bring a lawsuit against the Harper Trust . . . ." (ECF No. 2-1 at 2.) The letter further explained:

> Canberra's lawsuit would also ask the court for a declaratory judgment that the Harper Trust is not entitled to any sort of accommodation from the CCRs and Restrictions under the federal Fair Housing Act and related statutes. We have seen the materials the Harper Trust submitted to Lindon City in connection with its reasonable accommodation request and business license applications. We agree with the position of the City, which denied the requested accommodation and business license application.

(ECF No. 2-1 at 3.)

On October 2, 2018, Harper filed a Complaint against Lindon City in a case assigned to Judge Kimball. (2:18-cv-772, ECF No. 2.) Harper argued that "[t]he Denial of Request for Reasonable Accommodation is illegal in that it violates the Fair Housing Act." (2:18-cv-772, ECF No. 2 at 6.) He sought "a declaratory judgment that Defendant Lindon City ha[d] violated [his] rights under the Fair Housing Act." (2:18-cv-772, ECF No. 2 at 9.)

On November 21, 2018, Plaintiff Canberra Subdivision, LLC filed the Complaint in this

---

[1] (*See also* Decl. Harper, ¶ 9, ECF No. 58-2 at 3 ("There have been no training seminars at the Property after the one conducted in August 2018 which was before the application was denied and prior to the filing of this lawsuit.").)

3

case. (ECF No. 2.) Plaintiff argues that "[t]he Property Owners are entitled to a declaration that they are free to enforce the Restrictions without fear of recrimination or civil liability under the Fair Housing Act." (Compl. ¶ 34, ECF No. 2 at 6.)

On October 18, 2019, Defendants filed a Motion for Summary Judgment re: Ripeness. (ECF No. 41.) Defendants argued that "[t]he threatened harm is speculative because the permit for a residential treatment center that Defendants desire to open has been denied by Lindon City." (ECF No. 41 at 2.)

On November 4, 2019, Harper's counsel informed Plaintiff's counsel that Harper intended to withdraw his land use application and attached a proposed stipulation and order for dismissal. (*See* ECF No. 42-4 at 2.)

On November 5, 2019, Plaintiff's counsel sent a reply letter to Harper's counsel. (ECF No. 42-3 ("I am writing in response to your request that my clients stipulate to dismissal without prejudice of *Canberra Subdivsion* . . . .").) In this letter, Plaintiff's counsel wrote that it was "legally impossible" for Harper to "withdraw his application" because it had "been fully and finally adjudicated." (ECF No. 42-3 at 1.) Plaintiff's counsel's position was that Lindon City's code required Harper to file a petition in district court for review of the denial within thirty days of that decision. (ECF No. 42-3 at 1.) Counsel reasoned that because Harper had not appealed that decision within thirty days, the decision became a final adjudication upon the merits. (ECF No. 42-3 at 2.)

On November 6, 2019, Harper's counsel submitted to Lindon City a withdrawal of Harper's November 16, 2017, reasonable accommodation request. (ECF No. 42-2 at 3 ("On behalf of Mr. George E. (Bud) Harper . . . we respectfully withdraw the subject application dated November 16, 2017, presented to Lindon . . . .").)

On November 14, 2019, in the case before Judge Kimball, Harper moved to voluntarily dismiss the action against Lindon City without prejudice. (2:18-cv-772, ECF No. 62 at 1.)

On November 15, 2019, Plaintiff, in this case, submitted an Opposition to Defendants' Motion for Summary Judgment re: Ripeness. (ECF No. 42.) In this Opposition, Plaintiff argued that "[t]his case is ripe for adjudication because, regardless of whether Harper's attempted use of the Property violates the City's zoning laws, it violated (and will violate) the" subdivision's restrictive covenants. (ECF No. 42 at 13.)

On November 18, 2019, Judge Kimball granted Harper's motion to voluntarily dismiss his suit against Lindon City. (2:18-cv-772, ECF No. 66.) In his order, Judge Kimball noted that "[i]nstead of appealing" Lindon City's denial of his reasonable accommodation request, "Harper filed suit in this court alleging that the City had violated the FHA . . . ." (2:18-cv-772, ECF No. 66 at 2.)

On November 27, 2019, Defendants filed a Reply in support of their Motion for Summary Judgment re: Ripeness. (ECF No. 48.) In that Reply, Defendants noted that Judge Kimball had granted Harper's motion for voluntarily dismissal in his action against Lindon City. (ECF No. 48 at 2.) Defendants also argued that "[c]ertain contingencies must be resolved before this case is ripe." (ECF No. 48 at 7.)

## **Standard**

Summary judgment is proper when the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court must "view the evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party." *Commercial Union Ins. Co. v. Sea Harvest Seafood Co.*, 251 F.3d 1294, 1298 (10th Cir. 2001).

## Analysis

### Motion for Summary Judgment re: Ripeness

In its Complaint, Plaintiff provided that "[t]his Court has original jurisdiction pursuant to 28 U.S.C. § 1331 inasmuch as the Plaintiff seeks, among other things, a declaration pursuant to 28 U.S.C. § 2201," the Declaratory Judgment Act, "of the 'rights and other legal relations' of the parties under . . . the Fair Housing Act . . . ." (Compl. ¶ 6, ECF No. 2 at 2.) The Declaratory Judgment Act provides: "In a case of *actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

"Article III has long been interpreted as forbidding federal courts from rendering advisory opinions." *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011). "Unfortunately, there is no formula to determine in every dispute whether the Article III 'Case or Controversy' requirement has been satisfied." *Id*. "The classic attempt at a formulation in the declaratory-judgment context is set forth in *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227 (1937) . . . ." *Id*. The Supreme Court in *Aetna* said:

> The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be *a real and substantial controversy* admitting of specific relief through a decree of a conclusive character, *as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.*

*Aetna*, 300 U.S. at 240–41 (emphases added) (citations omitted). But "*Aetna* and the cases following it do not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not." *MedImmune, Inc.,* 549 U.S. at

127; *see also Public Service Comm'n of Utah v. Wycoff Co.*, 344 U.S. at 242 (1952) ("In *Aetna . . . .* Mr. Chief Justice Hughes used the whole catalogue of familiar phrases to define and delimit the measure of [the Declaratory Judgment Act]. If its metes and bounds are not clearly marked, it is because his available verbal markers are themselves elastic, inconstant and imprecise.")).

But in *Columbian Financial Corp.*, "the Tenth Circuit helpfully engaged in a detailed review of Supreme Court decisions examining the breadth and limits of declaratory-judgment justiciability." *Hot Springs Land Dev., LLC v. City of Truth or Consequences*, No. CV 13-0736 WPL/LAM, 2014 WL 12605652, at *5 (D.N.M. June 19, 2014). "As the [Tenth Circuit] recognized, the key question in many cases is whether the issue in question is 'presented in the context of a specific live grievance,'—that is, whether the issue 'arises in a specific dispute having real-world consequences.'" *Id*. at *5 (quoting *Columbian Financial Corp.*, 650 F.3d at 1378–79). "So, for example, when a bank feared that its membership in the Federal Reserve System might be threatened because a particular private company owned a few shares of the bank's stock, in apparent violation of the System's membership requirements, the [Supreme] Court found that the bank's action challenging those requirements was unripe because the Federal Reserve Board had 'disavow[ed] any action to terminate the Bank's membership' under the circumstances. *Id*. (quoting *Eccles v. Peoples Bank*, 333 U.S. 426, 432 (1948)). The action was unripe because the Supreme Court held that the bank's injury depended on the "concurrence of . . . contingent events" that were "too speculative to warrant anticipatory judicial determinations." *Eccles*, 333 U.S. at 432.

Further, the Tenth Circuit, examining *Public Service Commission of Utah v. Wycoff,* 344 U.S. 237 (1952), noted that the Supreme Court has "made clear that generally one cannot bring a declaratory-judgment action just to resolve one isolated issue in a possible future controversy."

7

*Columbian Financial Corp.*, 650 F.3d at 1380. "A declaratory judgment that would not have practical consequences without later additional litigation is not proper." *Id.*

In their opening brief in support of their Motion for Summary Judgment re: Ripeness, Defendants argued that this "declarative action . . . is unripe" because the "threatened harm is speculative because the permit for a residential treatment center that Defendants desire to open has been denied by Lindon City." (ECF No. 41 at 2.) In Opposition, Plaintiff argues that "regardless of whether Harper's attempted use of the Property violates the City's zoning laws, it violates the CCR's, and adjudication of the zoning issues does not, *per force*, resolve the issue of whether Harper's use violates the CCR's." (ECF No. 42 at 8.) In Reply, Defendants argued that this matter "was unripe at the time of the filing of the lawsuit" because "Harper's application was heard and denied prior to Plaintiff filing this lawsuit." (ECF No. 48 at 5.) Defendants further argued that "[c]ertain contingencies must be resolved before the case is ripe." (ECF No. 48 at 7.) They argue that for this matter to become ripe, "Harper would have to choose to apply to Lindon City" for a reasonable accommodation exception, and Lindon City "would have to grant" that application. (*See* ECF No. 48 at 7.)

After considering the Tenth Circuit's decision in *Columbian Financial*, and its detailed review of those Supreme Court decisions examining the breadth and limits of declaratory-judgment justiciability, the court is persuaded that this matter is not ripe. There is no live grievance.

Plaintiff seeks a declaratory judgment that "the Restrictions prohibit the Defendants' proposed facility" and that they are not "required to waive their right to enforce provisions of the restrictive covenants under the reasonable accommodation provision[s]" of the Fair Housing Act. (*See* ECF No. 2 at 6–7.) But before Defendants can operate their facility, they must obtain a

permit from Lindon City.[2] *See Harper v. Lindon City*, 2019 WL 2188910 at *5 ("all businesses operating within [Lindon] City limits are required to obtain a license to operate.").) Lindon City denied Defendant's application for that permit before this suit was filed. A declaration from this court related to the restrictive covenants would not have "real-world consequences" *Columbian Financial*, 650 F.3d at 1379, because Defendants would be in the same position they are now—without a permit and without the ability to open a treatment facility.

The court agrees with Defendants that there are several contingencies that would have to be resolved before this case could become ripe. Most importantly, Lindon City would have to grant Defendants a land use permit. Plaintiff has taken the position that Lindon City's August 29, 2018 denial of Defendants' previous application for a permit is "final and non-appealable." (ECF No. 42-3.) In order to now obtain a permit, Defendants would presumably have to successfully collaterally attack that denial. Thus, in order for a declaratory judgment in this case to have practical consequences there would have to be some later additional litigation. "A declaratory judgment that would not have practical consequences without later additional litigation is not proper." *Columbian Financial*, 650 F.3d at 1380. As in *Eccles*, "[t]he concurrence of these contingent events, necessary for injury to be realized, is [far] too speculative to warrant [an] anticipatory judicial determination[]" in this case. *Eccles*, 333 U.S. at 432.

Because Defendants cannot operate a treatment facility without a permit, and because their application for that permit was denied prior to the commencement of this suit, the court

---

[2] Plaintiff suggests Mr. Harper may open a treatment facility at the Property without a permit. (*See* ECF No. 56 at 13 ("Mr. Harper's conduct has demonstrated that he cannot be trusted to comply with the law. The mere fact that he doesn't have a permit to operate from the City means nothing.").)The court rejects Plaintiff's suggestion. Mr. Harper has submitted a declaration, under penalty of perjury, that he "will not use the Property as a residential treatment facility if [he does] not have the required permit under the law." (Decl. Harper ¶ 4, ECF No. 58-2 at 3.) If Mr. Harper operates a treatment facility at the Property without a permit, he would not only expose himself to possible penalties from Lindon City, he would also subject himself to prosecution for perjury and contempt of federal court for violating his declaration.

agrees with Defendants that "[t]his matter was unripe at the time Plaintiff filed this action." (ECF No. 48 at 5.) Because there is no actual controversy between the parties, the court lacks jurisdiction. *See Columbian Financial*, 650 F.3d at 1385. Defendants' Motion for Summary Judgment re: Ripeness is GRANTED.

Motion for Leave to File Surreply

Plaintiff moves for leave to file a surreply in opposition to Defendants' Motion for Summary Judgment re: Ripeness. (ECF No. 49 at 1.) Plaintiff argues that this surreply is necessary because Defendants raised new legal arguments in its reply relating to the Judge Kimball's dismissal of Harper's action against Lindon City. (*See* ECF No. 49 at 2.) A surreply is not necessary. As discussed above, this case was unripe from its inception due to Lindon City having denied Harper's application for a land use permit. Plaintiff's Motion for Leave to File Surreply is DENIED.

Motion for Leave to Conduct Discovery

Plaintiff "moves the Court for an order granting it leave to discover the facts and evidence necessary to rebut the factual challenges and disputes raised for the first time in the Defendants' Reply . . . ." (ECF No. 53 at 1–2.) Plaintiff argues that "discovery will demonstrate that the case was clearly ripe at the time it was filed because Harper had every intention of challenging the City's denial of his reasonable accommodation application and forcing the doors to his facility open through an injunction against the City in the zoning case." (ECF No. 53 at 13.) But again, even before Harper voluntarily dismissed his suit against Lindon City, this case was unripe at the time Plaintiff filed its complaint because it was not known whether Harper would be successful in his collateral attack on the City's denial. That uncertain contingency

made this case unripe at the time it was filed. Further discovery cannot lead to any evidence that changes that fact. Plaintiff's Motion for Leave to Conduct Discovery, (ECF No. 53) is DENIED.

**Conclusion**

There is no actual controversy between the parties. The court therefore lacks jurisdiction. The court orders the following:

I. Defendants' Motion for Judgment on the Pleadings, (ECF No. 16) is DENIED as MOOT.

II. Plaintiff's Motion for Summary Judgment, (ECF No. 19) is DENIED as MOOT.

III. Defendants' Motion for Summary Judgment re: Ripeness, (ECF No. 41) is GRANTED.

IV. Defendants' Motion to Dismiss for Lack of Jurisdiction: Standing, (ECF No. 43) is DENIED as MOOT.

V. Plaintiff's Motion for Leave to File Surreply, (ECF No. 49) is DENIED.

VI. Plaintiff's Motion for Leave to Conduct Limited Discovery, (ECF No. 53) is DENIED.

DATED this 12th day of March, 2020.

BY THE COURT:

_____
Judge Clark Waddoups
United States District Judge